ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **CONSEJO DE TITULARES CONDOMINIO ALTURAS DEL BOSQUE I** <br> DEMANDANTE(S)-APELANTE(S) <br><br> V. <br><br> **ADBK LLC Y OTROS** <br> DEMANDADA(S)-APELADA(S) | KLAN202401032 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de **SAN JUAN** <br><br> Caso Núm. **SJ2021CV02955 (807)** <br><br> Sobre: Cobro de Dinero |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

*Barresi Ramos*, juez ponente

**S E N T E N C I A**

En San Juan, Puerto Rico, hoy día 31 de marzo de 2026.

Comparece ante este Tribunal de Apelaciones, el **CONSEJO DE TITULARES DEL CONDOMINIO ALTURAS DEL BOSQUE I (CONSEJO DE TITULARES BOSQUE I)** mediante *Apelación* incoada el 20 de noviembre de 2024. En su escrito, nos solicita que revisemos la *Sentencia* emitida el 14 de febrero de 2024, por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan.[1] En dicha decisión judicial, se declaró con lugar la *Solicitud de Sentencia Sumaria por Insuficiencia de Prueba* presentada el 5 de diciembre de 2023 por **ADBK LLC, (ADBK)** y se desestimó, *con perjuicio*, la *Demanda*.

Exponemos el trasfondo fáctico y procesal que acompañan a la presente controversia.

**- I -**

El 8 de diciembre de 2014, **ADBK** adquirió mediante Escritura número 200 sobre *Venta Judicial*, ante el notario Héctor F. Lebrón González,

---

[1] Este dictamen judicial fue notificado y archivado en autos el 15 de febrero de 2024. Apéndice de la *Apelación*, págs. 201-210.

una propiedad aledaña al CONDOMINIO ALTURAS DEL BOSQUE I (CONDOMINIO BOSQUE I).[2]

Más tarde, el 7 de mayo de 2015, **ADBK** y la JUNTA DE DIRECTORES DEL CONDOMINIO ALTURAS DEL BOSQUE (JUNTA DE DIRECTORES BOSQUE I) suscribieron un *Acuerdo*.[3] Las partes convinieron que **ADBK** pagase las cuotas de mantenimiento a la JUNTA DE DIRECTORES por cada una de las unidades o apartamentos en el CONDOMINIO ALTURAS DEL BOSQUE II (CONDOMINIO BOSQUE II) que le pertenecían desde la fecha de este acuerdo hasta la fecha en que fuesen vendidos.

Conforme al *Acuerdo*, el 22 de junio de 2015, **ADBK** suscribió la Escritura Número 30 sobre *Condiciones Restrictivas* ante el notario Juan Acevedo Ramírez.[4] Esta escritura disponía la obligación del CONSEJO DE TITULARES DE ALTURAS DEL BOSQUE II (CONSEJO DE TITULARES BOSQUE II) de contribuir en los gastos de los elementos comunes entre ambos condominios en la proporción de 13.46%. La escritura sobre *Condiciones Restrictivas* se presentó e inscribió sobre la finca número 23,169 de la Sección Cuarta de San Juan, finca donde ubica el complejo de vivienda CONDOMINIO BOSQUE II.

Seguidamente, el 16 de mayo de 2021, el CONSEJO DE TITULARES BOSQUE I instó una *Demanda* sobre cobro de cuotas de mantenimiento de áreas comunes, cobro de dinero, Ley de Condominios, incumplimiento contractual y violación a escrituras sobre condiciones restrictivas.[5] La *Demanda* fue dirigida contra dos (2) partes: (i) el desarrollador **ADBK** y (ii) el CONSEJO DE TITULARES BOSQUE II fundamentado en su responsabilidad del pago de los gastos comunales.

---

[2] Apéndice de la *Apelación*, págs. 125-141.
[3] *Íd.*, págs. 142-150. Dentro del predio de BOSQUE I se construyó BOSQUE II el cual queda enclavado en la finca donde está ubicado BOSQUE I. Ante el hecho de que ambos condominios comparten elementos comunes, y **ADBK** no estaba contribuyendo a sufragar los costos relacionados a los elementos compartidos, el CONSEJO DE TITULARES BOSQUE I presentó una *Demanda* bajo el caso número K PE2013-3444.
[4] Apéndice de la *Apelación*, págs. 152-168. El 27 de julio de 2021, **ADBK** entregó al CONSEJO DE TITULARES BOSQUE II la administración del proyecto.
[5] Apéndice de la *Apelación*, págs. 1-15.

Tiempo después, el 20 de marzo de 2023, **ADBK** presentó su *Contestación a Demanda* conteniendo sus defensas afirmativas.[6] En la misma fecha, el CONSEJO DE TITULARES BOSQUE II presentó su *Contestación a Demanda* incluyendo sus defensas afirmativas.[7] El 17 de mayo de 2023, se celebró una *Conferencia Inicial*.[8] En dicha audiencia, se dispuso que el descubrimiento de prueba debía culminar en o antes de 31 de agosto de 2023 y se pautó el estado de los procedimientos para el 6 de septiembre de 2023.

El 31 de agosto de 2023, **ADBK** presentó una *Solicitud para Extensión de Fecha Límite de Descubrimiento de Prueba*.[9] Mediante esta, informó que las partes habían iniciado conversaciones transaccionales; la extensión del término del descubrimiento de prueba permitiría auscultar la posibilidad de negociación, así como la producción de la documentación necesaria para determinar los montos alegadamente adeudados.

Luego de varios incidentes procesales, el 5 de diciembre de 2023, **ADBK** presentó una *Solicitud de Sentencia Sumaria por Insuficiencia de Prueba*.[10] El 12 de enero de 2024, **ADBK** presentó una *Moción para que la Solicitud de Sentencia Sumaria se Tenga por Sometida Sin Oposición*.[11] Así las cosas, el 15 de enero de 2024, el CONSEJO DE TITULARES BOSQUE I presentó una *Moción en Oposición a Solicitud de Sentencia Sumaria*.[12]

El 14 de febrero de 2024, se decretó la *Sentencia* apelada. En su discernimiento, formuló cinco (5) hechos incontrovertidos, a saber:

Hechos Materiales Incontrovertidos:

1.       Mediante Escritura Número 200 de Venta Judicial otorgada ante el Notario Héctor F. Lebrón González, ADBK, LLC adquirió el siguiente inmueble que en adelante denominaremos Finca 2:

> "RÚSTICA: Parcela de terreno radicada en el Barrio Cupey de Río Piedras Sur, del término municipal de San Juan, Puerto Rico, con una cabida superficial de dieciséis mil trescientos noventa y uno punto nueve mil setecientos ocho (16,391.9708) metros cuadrados, equivalentes a cuatro puntos mil setecientas seis (4,1706) cuerdas.

---

[6] Apéndice de la *Apelación*, págs. 98-104.
[7] *Íd.*, págs. 105-109.
[8] *Íd.*, págs. 109.1 a 109.4.
[9] *Íd.*, págs. 109.5 a 109.6.
[10] Apéndice de la *Apelación*, pág. 113-180.
[11] *Íd.*, págs.181-184.
[12] *Íd.*, págs. 185-190. El CONSEJO DE TITULARES BOSQUE I no incluyó anejo alguno.

En linderos: por el Norte, con terrenos de Manuel Bonilla, Roque Castro y con la calle de acceso; por el Sur, con la calle de acceso, remanente de la finca principal de la cual se segrega y con una parcela donde existe un tanque de agua de la Autoridad de Acueductos y Alcantarillados de Puerto Rico (A.A.A.); por el Este, con terrenos del Condominio Alturas del Bosque I y por el Oeste, con el remanente de la finca principal de la cual se segrega".

2. ADBK, LLC adquirió la Finca 2 sujeta a diversas cargas y gravámenes, incluyendo:

Servidumbre de Paso de uso y disfrute y obligación de mantenimiento de la finca 20,619 constituida mediante escritura número 3, otorgada en San Juan, el 15 de enero de 2004, ante Carlos M. García Rullán, inscrita al folio 113 del tomo 727 de Río Piedras Sur (agora), inscripción 11. *Entrada138-1.*

3. El 7 de mayo de 2015, ADBK y Bosque I suscribieron un Acuerdo, a tenor con el cual:

[ADBK] llevará a su costo, las gestiones que sean necesarias ante la sección correspondiente del Registro de la Propiedad, para que de conformidad con la Ley de Condominios y la normativa vigente, se deje claramente establecido mediante los documentos constitutivos del régimen de Alturas del Bosque II, que el Proyecto o Condominio Alturas del Bosque II y el Condominio Alturas del Bosque I, sean administrados por una entidad común o comité timón compuesto por integrantes de los consejos de titulares de ambos condominios que vele por el buen funcionamiento y mantenimiento de ambos condominios, así como que asista en el manejo del mantenimiento de todos los elementos comunes compartidos entre ambos condominios y la seguridad, lo anterior con la ayuda de una misma entidad administradora. Se dejará claramente establecido en tales documentos, el proceso para la selección de dicho ente o comité timón. Además constara de forma clara en tales documentos que todas las normas para el uso y manejo de las áreas recreativas serán adoptadas por Alturas del Bosque I y que Alturas del Bosque II deberá adoptar tales normas. De igual forma y con el fin de lograr lo antes mencionado, [ADBK] se asegurará de hacer las gestiones necesarias, a su propio costo, para que la escritura de constitución del régimen y/o Acta de Rectificación, demás escrituras y documentos del Condominio Alturas del Bosque II, incluyendo su Reglamento, contengan los requisitos necesarios de conformidad con la Ley, y según sean requeridos por el Registrador de la Propiedad y por el Condominio Alturas del Bosque I, para que conste y sea efectivo tal manejo y mantenimiento de los elementos comunes compartidos por la referida entidad común. Además, se encargarán de incluir todas las normas y restricciones aplicables a ambos condominios contenidas en la Escritura de Condiciones Restrictivas y el Reglamento de Alturas del Bosque I, en tales documentos preparados para el Condominio Alturas del Bosque II, de forma que exista uniformidad entre ambos condominios. También, **se le requerirá a Alturas del Bosque II en los referidos documentos, a contribuir de conformidad con la Ley de Condominios, con todos los gastos necesarios para el mantenimiento y limpieza de tales elementos comunes, gastos correspondientes a las utilidades y los costos de**

**seguridad y demás gastos aplicables, conforme surjan de los presupuestos que prepare el Condominio Alturas del Bosque I para cada año**. [ADBK] se compromete a **requerir a los titulares de Alturas del Bosque II, mediante los documentos, escrituras y el Reglamento de dicho Proyecto y/o Condominio que contribuyan con el costo de toda gestión necesaria para el debido mantenimiento y limpieza de las áreas y elementos comunes compartidos, así como el costo de repintado de las áreas y elementos comunes compartidos, a través del pago de la cuota, futuras derramas, cuotas especiales, y aumentos de cuotas, de conformidad con los gastos proyectados que surjan en los presupuestos preparados por el Condominio Alturas del Bosque I para cada año**. Además, [ADBK] se compromete a requerir a los titulares de Alturas del Bosque II, mediante los documentos y escrituras de dicho Proyecto y/o Condominio, que contribuyan al pago de las pólizas de seguro de los elementos comunes compartidas, así como al aumento en el costo de las pólizas de seguros que sean necesarias por motivo de las nuevas áreas recreativas. [...]

[ADBK] pagará las [cuotas] de mantenimiento de [Bosque I] por cada una de las unidades o apartamentos de Alturas del Bosque II que le pertenezcan desde la fecha de este Acuerdo hasta la fecha en que sean vendidos. De igual forma, de ser necesario [ADBK] hará los pagos por concepto de derramas, cuotas especiales, y los pagos correspondientes a la póliza de seguro por cada apartamento que le pertenezca hasta la fecha de la venta de cada una de estas unidades.

*Entrada 138-2* [Énfasis suplido].

4.       El 22 de junio de 2015, ADBK otorgó la Escritura 30 de Condiciones Restrictivas ante el notario Juan M. Acevedo Ramírez.

En la parcela colindante está construido otro condominio (Alturas del Bosque I), en el cual habrá FACILIDADES COMUNALES para el uso de ambos condominios (Alturas del Bosque I y Alturas del Bosque II). Ambos condominios compartirán el uso y disfrute de dichas facilidades comunales, así como algunas áreas comunes construidas en la parcela donde ubica Alturas del Bosque I, definidas más adelante. Por tanto, Alturas de Bosque II deberá contribuir con el costo de toda gestión necesaria para el mantenimiento, seguridad y limpieza de las mismas, así como para su repintado, sea mediante cuotas o derramas especiales a tales fines, y en la proporción establecida en el inciso (C) (13) de esta sección. Las áreas comunes y/o facilidades compartidas por ambos condominios son las siguientes:

    a) ALTUAS DEL BOSQUE II:
       (1) Charcas de Retención.
       (2) Áreas de Taludes reforzados.
    b) En TERRENO COLINDANTE: (Alturas del Bosque I)
       (1) Estación de Bomba Sanitaria.
       (2) Cisterna de Agua Potable.
       (3) Control de Acceso.
       (4) Facilidades Recreativas.
       (5) Servidumbre de Agua.

(6) Área de Taludes reforzados.

(7) Calles y vías de acceso destinadas para el tránsito de vehículos de motor para acceder terrenos de Alturas del Bosque II.

(8) Áreas verdes que se encuentren aledañas a las áreas compartidas.

[...]

[C. (13) Cada condominio deberá aportar al mantenimiento, seguridad y limpieza de las áreas y equipos comunes descritas en el inciso Quinto, letra "B" anterior (facilidades localizadas en Alturas del Bosque I), a base de un presupuesto que establecerá la Junta de Directores y/o el Comité Timón de cada Condominio en común acuerdo. Ello incluye la aportación proporcional en el aumento en el pago de las pólizas de seguro de responsabilidad pública requeridas para aquellas áreas comunes que así lo requieran, tales como las facilidades recreativas. Dicha aportación se hará de manera proporcional al uso que le de cada complejo a las referidas áreas. La aportación proporcional que le corresponde al Condominio Alturas del Bosque II es equivalente a trece punto cuatro seis por ciento (13.46%) del total de los gastos comunales atribuibles únicamente a los elementos comunes que el Condominio Alturas del Bosque I comparta con el Condominio Alturas del Bosque II, descritos en el párrafo QUINTO, inciso (b).

*Entrada 138-3.*

5.       Bosque I no cuenta con presupuestos aprobados lo suficientemente detallados que permitan cuantificar las partidas en común por concepto de facilidades compartidas que correspondan a Bosque 2 o a los demás codemandados. *Entrada 138-4, 5, 6, 7. Entrada 141.*

El 1 de marzo de 2024, el **Consejo de Titulares Bosque I** presentó una *Moción en Solicitud de Reconsideración*.[13] Argumentó, entre otras cosas, que **ADBK** había convenido contribuir con los gastos de mantenimiento de las áreas comunes; no pudo conseguir los presupuestos para los años 2014 al presente; y la desestimación debía ser sin perjuicio. El 1 de abril de 2024, **ADBK** presentó su *Oposición a Moción en Solicitud de Reconsideración*.[14] Replicó que **Consejo de Titulares Bosque I** no ostentaba estados financieros, facturas, cheques o algún otro tipo de evidencia de pago y/o cobro alguno. En otras palabras, no contaba con la evidencia necesaria para probar los elementos de la causa de acción por cobro de dinero. A esos efectos, el 4 de abril de 2024, se dictó *Orden* en la cual, entre otros, dejó en suspenso la *Sentencia* recurrida; requirió al **Consejo de Titulares Bosque I** producir todos los documentos e información que acreditaban la autenticidad de los presupuestos anejados a la *Moción en Solicitud de*

---

[13] *Íd.*, págs. 211-261.
[14] Apéndice de la *Apelación*, págs. 263-269.

*Reconsideración*, su aprobación, sus documentos de soporte y su notificación oportuna dentro de los procedimientos a tenor con el *Acuerdo* otorgado por **ADBK** y el **CONDOMINIO BOSQUE I**.[15] Además, concedió **ADBK** y **CONSEJO DE TITULARES BOSQUE II** un término para realizar descubrimiento de prueba. Apercibió que, concluido dichos períodos, en o antes de 6 de septiembre de 2024, las partes debían presentar escritos acreditando si procedía o no la *Sentencia.*

Posteriormente, el 30 de mayo de 2024, **ADBK** presentó su *Moción Informativa y Solicitud de Desparalización de Sentencia (SUMAC # 144).*[16] Adujo que habiendo transcurrido aproximadamente 25 días de haber vencido la fecha para cumplir con lo requerido en la *Orden* prescrita 4 de abril de 2024, el **CONSEJO DE TITULARES BOSQUE I** no había producido documento alguno. El día 5 de junio de 2024, el **CONSEJO DE TITULARES BOSQUE I** presentó una *Réplica a Moción para "Desparalización" de Sentencia e Informando Entrega de Documentos.*[17] Expuso que el 1 de junio de 2024, abrió un expediente virtual en la plataforma *Dropbox* en la cual incluyó, entre otros documentos, los presupuestos aprobados para los años 2014, 2015, 2016, 2020, 2021 y 2023, así como las convocatorias a las asambleas y las actas que recogen los acuerdos de las referidas asambleas.

El 6 de junio de 2024, se dictaminó *Orden de Mostrar Causa* requiriéndole al **CONSEJO DE TITULARES BOSQUE I** mostrar causa por la cual no se debía reinstalar la *Sentencia* ello dentro del intervalo de treinta (30) días,.[18] El 15 de julio de 2024, el **CONSEJO DE TITULARES BOSQUE I** presentó *Moción en Cumplimiento de Orden* expresando que la prueba fue remitida a **ADBK**.[19] Poco después, 23 de julio de 2024, el **CONSEJO DE TITULARES BOSQUE**

---

[15] *Íd.*, págs. 270-271.
[16] *Íd.*, págs. 298-300.
[17] *Íd.*, págs. 301-303.
[18] Apéndice de la *Apelación*, págs. 309-310.
[19] *Íd.*, págs. 316-415.

**I** presentó *Moción Suplementando Moción en Cumplimiento de Orden (Entrada 182).*[20]

El 18 de octubre de 2024, se decidió una *Orden* enunciando que *"[l]os documentos aportados por el Demandante en esta etapa no nos mueven a modificar la Sentencia. En virtud de lo anterior, se levanta la paralización de la Sentencia la cual queda en vigor sin modificaciones".*[21]

Inconforme, el 20 de noviembre de 2024, el **CONSEJO DE TITULARES BOSQUE I** acudió ante este foro revisor mediante *Apelación* señalando el(los) siguiente(s) error(es):

> Erró el Honorable Tribunal de Primera Instancia al desestimar la Demanda por alegada insuficiencia de prueba ante el hecho de que la parte demandante (i) proveyó a la parte demandada los presupuestos anuales, (ii) demostró la autenticidad legal de los presupuestos, y (iii) no se requería documentación adicional "de soporte" para el cumplimiento del acuerdo.

> Erró el Honorable Tribunal de Primera Instancia al declarar con lugar una Moción de Sentencia Sumaria por Insuficiencia de Prueba y desestimar la Demanda, ya que el demandante demostró la existencia de una controversia material de hechos y anunció testigos específicos cuya declaración era relevante para controvertir los hechos presentados por la parte demandada.

> Erró el Honorable Tribunal de Primera Instancia al desestimar la Demanda por alegada insuficiencia de prueba y por el alegado incumplimiento de un acuerdo, sin considerar que la obligación de contribuir con cuotas de mantenimiento nace por virtud de la Ley de Condominios y no puede acordarse en contrario.

El 25 de noviembre de 2024, pronunciamos *Resolución* concediendo término de treinta (30) días para presentar su alegato en oposición a **ADBK**. Al día de hoy, **ADBK** no ha comparecido ante este Foro.

Evaluado concienzudamente el expediente del caso, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

\- **II** -

\- **A** - *SENTENCIA SUMARIA*

---

[20] *Íd.*, págs. 416-422.
[21] *Íd.*, págs. 426-428.

La *sentencia sumaria* es un mecanismo procesal disponible para adjudicar controversias sin la celebración de un juicio.[22] Su propósito o finalidad es propiciar la solución justa, rápida y económica de los litigios civiles que no presentan controversias genuinas de hechos materiales, y en los cuales solo resta dirimir una controversia de derecho.[23]

Este mecanismo se encuentra instituido en la Regla 36 de las de Procedimiento Civil de 2009.[24] Las Reglas 36.1 y 36.2 de las de Procedimiento Civil de 2009, en lo pertinente, prescriben que cualquiera de las partes "podrá presentar [...] una moción fundamentada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada".[25]

La parte promovente debe demostrar que no existe *controversia sustancial* sobre algún hecho material, pues la *sentencia sumaria* solo debe dictarse en casos claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes.[26] Para ello, debe desglosar en párrafos debidamente numerados y, para cada uno de ellos, debe especificar la página o el párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya.[27]

---

[22] *Birriel Colón v. Econo y otro*, 213 DPR 80, 90 (2023), citando a *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 334 (2021); *Zambrana García v. ELA et al.*, 204 DPR 328, 341 (2020).

[23] *Íd.*

[24] 32 LPRA Ap. V, R. 36.

[25] *Íd.*, R. 36.1 y 36.2; *Acevedo y otros v. Dpto. Hacienda y otros*, 212 DPR 335, 351 (2023).

[26] *Oriental Bank v. Caballero García*, 212 DPR 671, 679 (2023), citando a *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012).

[27] Regla 36.3 (a) de las de Procedimiento Civil de 2009. La antedicha Regla enuncia:
> (a) La moción de sentencia sumaria se notificará a la parte contraria y contendrá lo siguiente: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 431 (2013), n. 7.

La jurisprudencia interpretativa ha precisado que "[u]n hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable".[28]

Por su parte, quien se opone a que se dicte *sentencia sumaria* está obligado a controvertir la prueba presentada, contestando de forma detallada y específica aquellos hechos pertinentes para demostrar que existe una *controversia real y sustancial* que debe dilucidarse en juicio.[29] Entre la evidencia que puede presentar, están las siguientes: "certificaciones, documentos públicos, admisiones de la parte contraria, deposiciones, contestaciones a interrogatorios, declaraciones juradas o affidávits y hasta prueba oral".[30] Es decir, no basta con presentar meras afirmaciones. Resulta insuficiente para derrotar una solicitud de *sentencia sumaria* una declaración jurada que meramente exponga conclusiones reiteradas de las alegaciones de la demanda y hechas sin conocimiento personal de los hechos.[31] Empero, será el análisis del derecho aplicable y de la existencia de alguna *controversia sustancial de hechos materiales* lo que determinará si procede dictar sentencia sumariamente, y no el que la parte contraria deje de oponerse a la solicitud, o lo haga defectuosamente.[32]

---

[28] *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010); véase *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023).

[29] *Ramos Pérez v. Univisión*, *supra*, págs. 214-215. La Regla 36.3 (b) de las de Procedimiento Civil de 2009 sobre la moción y procedimiento expone:

> La **contestación a la moción de sentencia sumaria** deberá ser presentada dentro del término de veinte (20) días de su notificación y deberá contener lo siguiente: (1) lo indicado en los subincisos (1), (2) y (3) del inciso anterior; (2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable.

[30] *Acevedo v. Depto. Hacienda*, *supra*, pág. 350, citando a R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta. Ed., San Juan, LexisNexis, 2017, pág. 318; 32 LPRA Ap. V, R.36.5.

[31] *Ramos Pérez v. Univisión*, *supra*, págs. 215-216.

[32] *Ortiz v. Holsum*, 190 DPR 511, 525 (2014).

Al evaluar la procedencia de la solicitud de *sentencia sumaria,* el tribunal **analizará los documentos que acompañan la moción de** *sentencia sumaria,* **los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal**.[33] Por esta razón, "[t]oda inferencia que se haga a base de los hechos y documentos que obren en los autos, debe tomarse desde el punto de vista más favorable al que se opone a la solicitud de sentencia sumaria".[34] El tribunal **no** tiene que considerar los hechos que no están debidamente enumerados y no hagan referencia a los párrafos o páginas de las declaraciones juradas u otra prueba admisible en evidencia. Así como tampoco debe apreciar cualquier declaración jurada o cualquier otra prueba a la cual no se haya hecho referencia en la relación de hechos.

Pero, "cualquier duda no es suficiente para derrotar una moción de sentencia sumaria; por el contrario, tiene que ser una duda que permita concluir que existe una **controversia real y sustancial** sobre hechos relevantes y pertinentes".[35] Por ende, "[existe] una controversia real cuando la prueba ante el tribunal es de tal naturaleza que un juzgador racional de los hechos podría resolver a favor de la parte promovida".[36]

La parte promovente puede prevalecer por la vía sumaria si presenta prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. En cambio, la parte promovida puede derrotar la moción de tres (3) maneras diferentes: (1) si establece una controversia real de hechos sobre uno de los elementos de la causa de acción de la parte promovente; (2) si presenta prueba que apoye una defensa afirmativa, o (3) si presenta prueba que establezca una controversia sobre la credibilidad de los testimonios jurados que presentó la parte promovente.[37]

---

[33] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 913 (1994).
[34] *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 610-611 (2000).
[35] *Ramos Pérez v. Univisión, supra*, pág. 214.
[36] *Íd.*
[37] *Íd.*, pág. 217.

En caso de que el foro primario resuelva que procede la celebración de un juicio, es decir: (1) deniegue dictar *sentencia sumaria* sobre la totalidad del pleito; (2) no conceda todo el remedio solicitado, o (3) deniegue la moción de *sentencia sumaria*, tiene que consignar los hechos sobre los cuales no hay controversia. Ello, pues serán estos sobre los que será innecesario pasar prueba durante el juicio.[38] Del mismo modo, el tribunal puede dictar *sentencia sumaria* de naturaleza interlocutoria para resolver cualquier controversia que existe entre las partes y sea separable de las controversias restantes.[39]

Ahora bien, este Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar [denegaciones] o concesiones de mociones de *sentencia sumaria*.[40] Esto significa que, al evaluar la solicitud de *sentencia sumaria*, al igual que el foro primario, debemos aplicar los criterios de la Regla 36 de las de Procedimiento Civil de 2009 y su jurisprudencia interpretativa. Ello supone examinar el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de *sentencia sumaria*, llevando a cabo todas las inferencias permisibles a su favor. Como resultado, tenemos el deber de revisar que tanto la moción de *sentencia sumaria* como su oposición cumplan con los requisitos de forma erigidos en la Regla 36 de las de Procedimiento Civil de 2009.[41]

En esencia, si el foro primario **acogió la moción** y dictó sentencia sumariamente, nos corresponderá revisar que, efectivamente si existen hechos materiales en controversia.[42] De existir, procederemos entonces a cumplir con la exigencia de la Regla 36.4 de las de Procedimiento Civil de 2009 y exponer concretamente cuáles hechos materiales se encontró que

---

[38] *Pérez Vargas v. Office Depot,* 203 DPR 687, 698 (2019).
[39] 32 LPRA Ap. V, R. 36.3 (e).
[40] *Rosado Reyes v. Global Healthcare,* 205 DPR 796, 809 (2020); *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020).
[41] *Birriel Colón v. Econo y otros, supra,* pág. 91.
[42] *Rivera Matos et al. v. Triple S et al., supra,* pág. 1025.

están en controversia y cuáles están incontrovertidos.[43] Puede hacerse en el dictamen en el cual se disponga del caso y hacer referencia al listado enumerado de hechos incontrovertidos dispuestos por el foro recurrido. Si se determina que los hechos materiales realmente están incontrovertidos, se procederá a revisar *de novo* si el Tribunal de Primera Instancia adjudicó correctamente el derecho.[44]

En palabras sencillas, los tribunales revisores estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta.[45]

### - B – *INSUFICIENCIA DE LA PRUEBA*

En *Medina Morales v. Merck, Sharp & Dhome,* el Tribunal Supremo de Puerto Rico adoptó el modelo de *sentencia sumaria* por insuficiencia de la prueba reconocido en la esfera federal.[46] Nuestro más Alto Foro esbozó aquí que "[b]ajo la modalidad de la *sentencia sumaria* por insuficiencia de prueba, después de que las partes hayan realizado un adecuado y apropiado descubrimiento de prueba, el promovente puede presentar su moción de sentencia sumaria, alegando la insuficiencia de prueba por parte del promovido".[47]

---

[43] La aludida Regla 36.4 de las de Procedimiento Civil de 2009 sobre pleito no decidido en virtud de moción decreta:

> Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y es necesario celebrar juicio, será **obligatorio** que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad. A base de las determinaciones realizadas en virtud de esta regla, el tribunal dictará los correspondientes remedios, si alguno.

[44] *Rivera Matos et al. v. Triple S et al., supra,* pág. 1025.

[45] *Birriel Colón v. Econo y otros, supra,* pág. 91; *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 114–116 (2015).

[46] *Medina v. M.S. & D. Química P.R., Inc.,* 135 DPR 716 (1994).

[47] *Íd.,* pág. 732.

La parte promovente tiene el peso afirmativo de demostrar que se ha realizado un descubrimiento de prueba completo, adecuado y apropiado, y que, a pesar de ello, la parte promovida no cuenta con evidencia admisible suficiente para probar, por lo menos, un elemento esencial indispensable para su caso.[48] Esta modalidad de la moción de *sentencia sumaria* descansa en la premisa de que le corresponde a la parte demandante probar su caso.[49] Por tanto, al defenderse de esta moción, la parte promovida puede solicitar que se posponga su consideración hasta que finalice el descubrimiento de prueba.[50] No obstante, una vez completado un descubrimiento de prueba adecuado, la parte promovida no puede evadir presentar una oposición fundamentada.[51] Toda vez que finalizada el descubrimiento de prueba, si la parte promovida no cuenta con prueba suficiente y adecuada que sostenga sus alegaciones, no hay razón para celebrar un juicio.[52]

Una simple alegación en la cual se concluya que no existe una evidencia suficiente para probar el caso no basta para apoyar una moción de *sentencia sumaria* de esta naturaleza. Tampoco se considerará adecuado el descubrimiento de prueba cuando un análisis de los documentos sometidos con la moción, con la oposición y aquellos que constan en el récord, refleje que la parte promovente ha dejado de auscultar alguna información que le pudiera haber conducido a obtener una prueba admisible. Por ejemplo, ha dejado de deponer o de someter un interrogatorio con relación a un testigo que pueda proveer un testimonio relevante.[53]

En definitiva, para que proceda dictar una *sentencia sumaria* por insuficiencia de la prueba la parte promovente debe demostrar que: (1) la vista evidenciaría es innecesaria; (2) la parte demandante no cuenta con

---

[48] *Íd.,* págs. 732- 733.
[49] *Ramos Pérez v. Univisión, supra,* pág. 218.
[50] *Íd.,* pág. 219.
[51] *Íd.*
[52] *Pérez v. El Vocero de P.R.,* 149 DPR 427, 466 (1999); *Medina v. M.S. & D. Química P.R., Inc., supra,* pág. 734.
[53] *Medina v. M.S. & D. Química P.R., Inc., supra,* pág. 733.

evidencia suficiente para probar algún hecho esencial de la causa de acción, y (3) como cuestión de derecho, procede la desestimación de la reclamación.[54]

La parte promovida debe presentar una oposición a la solicitud de *sentencia sumaria* debidamente fundamentada, pues "[n]o puede evadir la moción del promovente [por] el mero pretexto de que, a pesar de no contar con evidencia suficiente para probar un elemento indispensable de su reclamación, merece 'su día en corte'".[55] Para derrotar una moción de *sentencia sumaria* bajo esta modalidad de la insuficiencia de la prueba, la parte promovida puede: (1) presentar prueba admisible en evidencia o una prueba que pueda convertirse en admisible —aunque de momento no lo sea— o que dé lugar a una prueba admisible que demuestre que existe evidencia para *probar* los elementos esenciales de su caso; (2) demostrar que hay prueba en el récord que puede convertirse en una prueba admisible y que derrotaría la contención de insuficiencia de la parte promovente; (3) demostrar que la moción es prematura porque el descubrimiento es inadecuado, está a medias o no se ha realizado, o (4) que este, por su naturaleza, no es un caso que conviene que se resuelva por el mecanismo expedito de la *sentencia sumaria*.[56] Respecto a esto último, conviene apuntar que, si bien se desaconseja utilizar la moción de *sentencia sumaria* en casos en los cuales existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad es esencial y está en disputa, la Regla 36 de las de Procedimiento Civil de 2009 no queda excluida como cuestión de derecho de ningún procedimiento en particular y puede funcionar en cualquier contexto sustantivo.[57]

Resta destacar que a la modalidad de la *sentencia sumaria* por insuficiencia de la prueba le aplican todas las normas y los principios que

---

[54] *Ramos Pérez v. Univisión, supra,* págs. 217-218.
[55] *Rodríguez Méndez v. Laser Eye,* 195 DPR 769, 787 (2016).
[56] *Medina v. M.S. & D. Química P.R., Inc., supra,* pág. 733.
[57] *Ramos Pérez v. Univisión, supra,* págs. 219-220.

deben emplear los tribunales al evaluar una moción de *sentencia sumaria* ordinaria.[58]

### - C – *LEY DE CONDOMINIOS DE PUERTO RICO*

La Ley Núm. 129-2020, mejor conocida como la *Ley de Condominios de Puerto Rico*, se aprobó con el fin de actualizar las normas que rigen la convivencia en los condominios y atemperar la norma estatutaria a cambios sociológicos experimentados en el país.[59] Dado que, subyace la necesidad imperiosa de crear "unas reglas mínimas para el uso y disfrute de cada apartamento" que "facilit[en] la convivencia entre los titulares de un inmueble, sin que se intervenga indebidamente con los derechos individuales de los demás".[60]

Una de las responsabilidades más importantes que distingue al esquema de propiedad horizontal es la obligación de los titulares de pagar cuotas de mantenimiento para la conservación y administración de las áreas comunes de un condominio; es neurálgicamente conceptuado como "uno de los principios esenciales de la vida en comunidad".[61] Este cometido ha sido debidamente incorporado a nuestras leyes mediante el Artículo 59 de la *Ley de Condominios de Puerto Rico* el cual dispone que "[l]os titulares de los apartamentos están **obligados a contribuir proporcionalmente** a los gastos para la administración, conservación y reparación de los elementos comunes generales del inmueble y, en su caso, de los elementos comunes limitados, así como a cuantos más fueren legítimamente acordados".[62]

Es notable que, la obligación de pago proporcional de cuotas de mantenimiento constituye un *gravamen preferente* sobre el apartamento, lo cual advierte su naturaleza fundamental para el funcionamiento y duración

---

[58] *Medina v. M.S. & D. Química P.R., Inc., supra,* pág. 734.

[59] Ley 129-2020, *Ley de Condominios de Puerto Rico*, 31 LPRA § 1291 *et seq.* Véase *Exposición de motivos* de la Ley 129-2020.

[60] *Junta Dir. Cond. Montebello v. Torres,* 138 DPR 150, 154 (1995).

[61] *Condominio First Federal v. LSREF2,* 202 DPR 934, 940 (2019).

[62] 31 LPRA § 1923d. (Énfasis suplido). Los desarrolladores deben abonar cuotas de mantenimiento mientras sean aún titulares de alguna propiedad bajo este esquema, "independientemente del número de apartamentos que resten por construir y vender". *Íd.*, § 1922d.

del régimen.[63] Además, se ha patrocinado que, si un titular enajena su apartamento, este y el adquirente *voluntario* serían solidariamente responsables por el pago de las cuotas de mantenimiento vencidas.[64]

Por último, el citado Artículo 59 de la *Ley de Condominios de Puerto Rico* implanta que "la deuda de un titular por concepto de cuotas de mantenimiento para gastos comunes se le podrá reclamar judicialmente luego de ser requerido el pago mediante correo certificado con acuse de recibo y de [e]ste no cumplir el pago en el plazo de vencimiento".[65] Dicho de otro modo, es necesario que se le haga al titular del apartamento un requerimiento de pago antes de demandarlo en cobro de dinero por el impago de cuotas de mantenimiento de áreas comunes.

- III -

El **CONSEJO DE TITULARES BOSQUE I** puntea que el foro apelado erró: (a) al desestimar la *Demanda* por alegada insuficiencia de la prueba ante el hecho de que se le entregaron a **ADBK** los presupuestos anuales, se demostró la autenticidad de los mismos y no se requería ningún documento adicional; (b) al declarar *con lugar* la *Solicitud de Sentencia Sumaria por Insuficiencia de Prueba* y desestimar la *Demanda* dado que comprobó la existencia de una controversia material de hechos y anunció testigos para controvertir los hechos presentados por **ADBK**; y (c) al desestimar la *Demanda* por alegada

---

[63] *Íd.*, § 1923e. La *Ley de Condominios* instaura que las excepciones a este crédito preferente son:

    a) Los créditos a favor del Gobierno de Puerto Rico y la correspondiente municipalidad por el importe de las cinco (5) últimas anualidades y la corriente no pagada, vencidas y no satisfechas de las contribuciones que graviten sobre el apartamento.

    b) Por la prima del seguro de dos (2) años, del apartamento o del inmueble total, en su caso, y si fuese el seguro mutuo por los dos (2) últimos dividendos que se hubiesen repartido.

    c) Los créditos hipotecarios inscritos en el registro de la propiedad. *Íd.*, sec. 1923f.

[64] *Íd.*, § 1923e; *Condominio First Federal v. LSREF2, supra*, págs. 940-941. Esto es sin perjuicio al derecho del adquirente a repetir contra el transmitente por las cantidades satisfechas en solidaridad; un adquirente *involuntario* solo respondería por las cuotas debidas correspondientes a los seis (6) meses anteriores a la adquisición, exceptuando las penalidades impuestas al titular anterior durante ese periodo. Véase *Cons. Tit. Centro Int'l Torre II v. PRCI*, 210 DPR 403, 415-420 (2022); *Coop. Oriental v. Cons. Tit. y otros*, 195 DPR 330, 341 (2016), y *Asoc. de Condómines v. Naveira*, 106 DPR 88, 86, 96-97 (1977) para una contraposición entre los conceptos de adquirente voluntario e involuntario.

[65] 31 LPRA § 1923d.

insuficiencia de prueba y por incumplimiento de un acuerdo, sin considerar que la obligación del pago de cuotas de mantenimiento emana de la *Ley de Condominios de Puerto Rico* y no puede acordarse en contrario. Al estar íntimamente relacionados, discutiremos los tres (3) señalamientos de error en conjunto.

Como cuestión de umbral, precisa destacar que, a tenor con la normativa ateniente a la revisión de una *sentencia sumaria*, y luego de justipreciar minuciosamente los respectivos escritos, hallamos que: (i) la *Solicitud de Sentencia Sumaria por Insuficiencia de Prueba* presentada el 5 de diciembre de 2023 por **ADBK** cumple con los requisitos de forma estatuidos en la Regla 36 de las de Procedimiento Civil de 2009. **ADBK** razonó que el CONSEJO DE TITULARES BOSQUE I carecía de evidencia para probar uno o más de los elementos esenciales de su causa de acción –que la deuda que se reclama sea una líquida y exigible– por lo que, no existe fundamento para que proceda el cobro de dinero. A su vez, la *Moción en Oposición a Solicitud de Sentencia Sumaria* presentada el 15 de enero de 2024 por el CONSEJO DE TITULARES BOSQUE I no cumplió a cabalidad con los requisitos. Esto es, no logró controvertir lo expuesto por **ADBK**. Ello no dispone sin más de la controversia ante nuestra consideración.

Por otro lado, el expediente judicial revela que el foro recurrido aplicó correctamente la Regla 36 de las de Procedimiento Civil de 2009. En ese sentido, determinó los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial.[66] En consecuencia, acogemos los hechos esenciales y pertinentes no controvertidos.

El CONSEJO DE TITULARES BOSQUE I planteó que los documentos provistos durante la paralización de la *Sentencia* eran suficientes para

---

[66] Es menester recalcar que la *Moción de Reconsideración* presentada por el CONSEJO DE TITULARES BOSQUE I esencialmente cuestionaba que el tribunal *a quo* haya tomado como incontrovertido el hecho de que no se contaba con presupuestos aprobados lo suficientemente detallados que le permitieran cuantificar las partidas en común por concepto de las facilidades compartidas. Apéndice de la *Apelación,* págs. 211-261.

asegurar que **ADBK** debía satisfacer la acreencia por concepto de cuotas de mantenimiento vencidas dado que era una deuda líquida y exigible.[67] Empero, las minutas o actas de todas las asambleas ordinarias celebradas por el CONSEJO DE TITULARES BOSQUE I pertinentes al caso no obran en el expediente; solo hay *una* minuta que atañe a los años 2016-2020, y de esta no se extrae que se haya discutido algún asunto concerniente a las áreas comunes compartidas entre BOSQUE I y BOSQUE II.[68] Estos documentos eran imperiosos para acreditar el origen de las cuantías plasmadas en los presupuestos proporcionados por el CONSEJO DE TITULARES BOSQUE I. No resulta suficiente para refrendar su causa de acción el hecho de que hayan facilitado los presupuestos de los años 2014-2024 debido a que no se cuenta con una noción real sobre cuáles son los mantenimientos realizados y cómo se llegó a la cuantía reclamada.

Al no tener claridad sobre el origen de las cuantías plasmadas en los presupuestos suministrados, el CONSEJO DE TITULARES BOSQUE I no derrotó la contención de *insuficiencia de la prueba* presentada por **ADBK**. A la luz de ello, la jurisprudencia es clara y concreta que *procede* la resolución sumaria por insuficiencia de la prueba cuando, al concluir un descubrimiento de prueba, se desprende que la evidencia existente es insuficiente para sostener las alegaciones de la *Demanda* y los elementos esenciales de la reclamación.

En definitiva, discernimos que el tribunal primario no abusó de su discreción, cometió perjuicio o error manifiesto al declarar *ha lugar* la *Solicitud de Sentencia Sumaria por Insuficiencia de Prueba* presentada por **ADBK,** toda vez que, su determinación es esencialmente correcta y encontró

---

[67] Una deuda se considera *líquida* cuando la cuantía debida es cierta y determinada, y se concibe como *exigible* cuando la obligación no está sujeta a alguna causa de nulidad y puede reclamar su cumplimiento. *RMCA v. Mayol Bianchi*, 208 DPR 100, 108 (2021); *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950); *Ramos y otros v. Colón y otros*, 153 DPR 532, 546 (2001).
[68] Las minutas o actas necesarias para colocar al tribunal en posición de resolver son las correspondientes a los años **2014-2024**. El CONSEJO DE TITULARES BOSQUE I proveyó los respectivos presupuestos aprobados, pero *no* su origen. La única minuta provista, junto con un informe de la Junta de Directores saliente, fue presentada luego de que el foro inferior le impusiera una sanción de $5,000.00 y $6,000.00 en honorarios de abogado por dilaciones indebidas, las cuales fueron satisfechas. Apéndice de la *Apelación*, págs. 211-261, 288-291, y 357-374.

fundamento en los documentos que obran en el expediente judicial. En conclusión, **no** se incidió en el(los) error(es).

- **IV** -

Por los fundamentos antes expuestos, ***modificamos*** la determinación judicial a los efectos de que la desestimación sea ***sin perjuicio.*** Así modificada, ***confirmamos*** la *Sentencia* intimada el 14 de febrero de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan, en todos sus demás extremos.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Rivera Marchand consigna su voto concurrente al dictamen presentado ante su consideración el 25 de marzo de 2026 y expresa que: "tratándose de una causa adjudicada por la vía sumaria sin oposición, debió haber sido atendido con mayor premura conforme exigen nuestras normas procesales".

La Jueza Cintrón Cintrón concurre con el resultado y hace constar las siguientes expresiones: "En atención a las particularidades que presenta el caso, entiendo se debió disponer del recurso con mayor celeridad".

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones